# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID L. JOHNSON,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>　　　　Defendants. | Case No. 17-cv-1647 DMS (KSC)<br><br>**ORDER (1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND (2) GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |

     On August 16, 2017, Plaintiff David L. Johnson filed a complaint pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), requesting judicial review of the final administrative decision of Defendant Commissioner of Social Security. On February 5, 2018, Plaintiff filed a motion for summary judgment, requesting the Court to reverse Defendant's decision or remand the case for further proceedings. On May 4, 2018, Defendant filed a cross-motion for summary judgment and a response in opposition to Plaintiff's motion. Plaintiff did not file a reply or an opposition to Defendant's cross-motion. For the following reasons, the Court denies Plaintiff's motion for summary judgment and grants Defendant's cross-motion for summary judgment.

///

# I.

# BACKGROUND

**A. Procedural History**

On January 30, 2014, Plaintiff filed an application for disability income benefits, alleging a disability onset date of January 1, 2011. (Administrative Record ("AR") at 57, 106, 214–15.) Plaintiff alleged he was disabled due to bacterial meningitis that led to septic arthritis of the left knee, osteoarthritis and degenerative joint disease of the left knee, obesity, asthma, borderline intellectual functioning, expressive language disorder, learning disorder, and hearing loss. (*Id.* at 59, 215.) Plaintiff's claim was denied initially and upon reconsideration, after which Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 107–24, 127–33.)

ALJ Robert E. Lowenstein held a hearing on September 30, 2015 and January 21, 2016 in Los Angeles, California.[1] (AR at 70–89.) Attorney Mark Tunnell represented Plaintiff at the hearing. (*Id.*) The ALJ heard testimony from Plaintiff, impartial medical experts Harvey L. Alpern, M.D., Peter R. DeMarco, M.D., and Betty L. Borden, Ph.D., and vocational expert Howard J. Goldfarb. (*Id.* at 86–87, 93–104.) On February 3, 2016, the ALJ issued a written decision, finding Plaintiff not disabled. (*Id.* at 54–65.) Plaintiff filed a request for review of the ALJ's decision, which the Social Security Appeals Council denied on June 19, 2017. (*Id.* at 1–7.) Plaintiff filed the present case on August 16, 2017.

**B. Plaintiff's Medical History**

Plaintiff received an annual physical examination on April 11, 2014, where he reported a history of meningitis and hearing loss, and surgery on his left knee when he was five years old. (AR at 370.) During the examination, Plaintiff failed

---

[1] The hearing was continued so Plaintiff could obtain additional medical record and the ALJ could obtain testimony from an impartial medical expert in otolaryngology. (*Id.* at 57, 88–89.)

his hearing screening and received a referral for hearing aids. (*Id.* at 370.) He was diagnosed with morbid obesity, conductive hearing loss, and asthma. (*Id.* at 371.)

On May 7, 2014, Plaintiff saw Thaworn Rathana-Nakintara, M.D. for psychiatric evaluation. (AR at 372–77.) Plaintiff's mental status examination showed no abnormalities. (*Id.* at 375.) Dr. Rathana-Nakintara noted Plaintiff was diagnosed with ADHD as a child and was treated with Ritalin until he was 18 years old. (*Id.* at 372.) Dr. Rathana-Nakintara observed Plaintiff had not been taking any psychotropic medications and "he is holding himself quite well." (*Id.* at 376.) Dr. Rathana-Nakintara diagnosed Plaintiff with learning disability and noted a global assessment functioning score of 95. (*Id.* at 375.) Dr. Rathana-Nakintara opined "Plaintiff would have no limitations performing simple and repetitive tasks and ... detailed and complex tasks." (*Id.*) Dr. Rathana-Nakintara also opined Plaintiff could "perform work activities on a consistent basis without special or additional supervision[,]" and "would have no limitations completing a normal workday or workweek." (*Id.*)

On May 9, 2014, Plaintiff underwent an internal medicine consultation by Azizollah Karamlou, M.D. (AR at 378–83.) After the examination, Dr. Karamlou noted Plaintiff "is a well-developed, well-nourished male" and "is in no acute distress." (*Id.* at 379.) Although Plaintiff had tenderness in the left knee, Dr. Karamlou stated there was no evidence of acute inflammation or reduced range of motion. (*Id.* at 379–80.) Dr. Karamlou observed Plaintiff had "a normal gait and balance, and does not require the use of assistive devices for ambulation." (*Id.* at 379.) But as a result of the meningitis he suffered at five years old, Dr. Karamlou found Plaintiff had decreased hearing activity predominantly of his left ear and had difficulty with normal conversation. (*Id.* at 379, 381.) Dr. Karamlou opined Plaintiff is able to lift and carry 50 pounds occasionally and 25 pounds frequently and can walk, sit, and stand for six hours out of an eight-hour day. (*Id.* at 381.)

On October 2, 2014, Plaintiff visited Chancelor Daniel, M.D., complaining of pain in his right foot and left knee. (AR at 422.) Dr. Daniel recommended Plaintiff take ibuprofen for pain management and use elastic supports on his right foot and left knee. (*Id.*) Subsequently, at a follow-up visit, Plaintiff was instructed to schedule an appointment for an orthopedic follow-up. (*Id.* at 423.) On March 13, 2015, Plaintiff saw Jimmy Soliman, M.D. and complained of pain and occasional clicking in the left knee. (*Id.* at 428–29, 449–50.) He reported that he was currently taking ibuprofen and Motrin. (*Id.* at 428, 449.) Plaintiff was given an orthopedic referral. (*Id.* at 411, 429.) The record does not show whether Plaintiff scheduled an appointment with an orthopedic specialist.

## C. Medical Expert Testimony

The following medical experts testified at the hearing: (1) Harvey Alpern, M.D., a board-certified internist and cardiologist, (2) Peter R. DeMarco, M.D., a board-certified otolaryngologist, and (3) Betty Borden, Ph.D., a licensed clinical psychologist. These medical experts all testified they were familiar with the Social Security Medical Listings contained in Appendix 2, Subpart A.

Having reviewed Plaintiff's record, Dr. Alpern testified at the hearing, stating Plaintiff has obesity, borderline hypertension "that's not evidently severe," asthma, and mild to moderate degenerative joint disease of the left knee. (AR at 96–98, 432–38.) Dr. Alpern opined Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, sit, stand, walk six hours out of the eight-hour day, and occasionally push and pull with the left lower extremity. (*Id.* at 98.) Dr. Alpern concluded the severity of Plaintiff's physical impairments did not meet or equal a listing of disability. (*Id.*)

Next, Dr. DeMarco testified, similarly opining the severity of Plaintiff's physical impairments did not meet or equal a listing of disability. (AR at 94.) Dr. DeMarco explained Plaintiff had hearing impairments in both ears, predominantly in the left ear, but did not meet or equal either listings contained in Social Security

Medical Listings, Appendix 2, Subpart A or B. (*Id.* at 93–95.) Dr. DeMarco stated Plaintiff should be encouraged to use hearing aids. (*Id.* at 95.)

Next, Dr. Borden testified Plaintiff had borderline intellectual functioning with an IQ of 74, expressive language disorder, and learning disorder. (AR at 87, 98.) Dr. Borden opined the severity of Plaintiff's mental impairments did not meet or equal any of the Social Security listings. (*Id.* at 87.) Dr. Borden explained Plaintiff has moderate restriction in activities of daily living, moderate difficulty with social functioning, moderate difficulty in concentration, persistence, and pace, and no episodes of decompensation. (*Id.*)

## II.

## LEGAL STANDARD

Under the Social Security Act, "disability" is defined as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 423(d)(1)(A). The impairment must be so severe that the claimant "is not only unable to do his previous work but cannot ... engage in any other kind of substantial gainful work." 42 U.S.C. § 423(d)(2)(A). In addition, the impairment must result "from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory techniques." 42 U.S.C. § 423(d)(3).

A court cannot set aside a denial of benefits unless the Commissioner's findings are based upon legal error or are not supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986); *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Orteza v. Shalala*, 50 F.3d 748,

749 (9th Cir. 1995). It is more than a scintilla, but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).

To determine whether substantial evidence exists to support the ALJ's decision, a court reviews the record as a whole, not just the evidence supporting the decision of the ALJ. *Walker v. Matthews*, 546 F.2d 814, 818 (9th Cir. 1976). A court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). In short, a court must weigh the evidence that supports the Commissioner's conclusions and that which does not. *Martinez*, 807 F.2d at 772.

If there is substantial evidence to support the decision of the ALJ, the decision must be upheld even when there is evidence on the other side, *Hall v. Secretary*, 602 F.2d 1372, 1374 (9th Cir. 1979), and even when the evidence is susceptible to more than one rational interpretation. *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). If supported by substantial evidence, the findings of the Commissioner as to any fact will be conclusive. 42 U.S.C. § 405(g); *Vidal v. Harris*, 637 F.2d 710, 712 (9th Cir. 1981).

### III.
### DISCUSSION

Plaintiff raises one argument in his motion for summary judgment. He argues the ALJ erred by failing to provide clear and convincing reasons for rejecting his testimony regarding the severity of his symptoms. Defendant disputes there was anything improper about the ALJ's analysis, and urges the Court to affirm the Commissioner's decision denying Plaintiff's request for SSI benefits.

The ALJ is required to make "a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)). To determine whether a claimant's testimony regarding subjective pain or symptoms is

credible, an ALJ must engage in a two-step analysis. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). First, "'the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). If the claimant satisfies this first step, "and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear and convincing reasons' for the rejection." *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

Here, the ALJ found Plaintiff met the first step. (*See* AR at 62) ("After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]"). The ALJ, however, found that Plaintiff did not meet the second step because his "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not entirely credible for the reasons explained in this decision." (*Id.*) Because there is no evidence in the administrative record to suggest malingering on Plaintiff's part, the Court will evaluate whether the ALJ articulated specific, clear, and convincing reasons for rejecting Plaintiff's testimony.

Plaintiff contends the ALJ improperly discredited his subjective complaints solely on the basis that they were not supported by objective medical evidence. Defendant correctly argues the ALJ offered other clear and convincing reasons for rejecting Plaintiff's subjective complaints. Plaintiff testified at the hearing that he cannot work because of his asthma, hearing loss, and inability "to stand on [his] leg too long." (AR at 80.) He explained he can only stand for 30 minutes, sit for 20 minutes, walk a half a block, and lift 15 to 25 pounds. (*Id.* at 80–81.) The ALJ did

not find Plaintiff's allegations credible due to his failure to seek treatment. *See Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) ("'[I]f a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated[.]'") (quoting *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007)); *Molina*, 674 F.3d at 1112 (similar). While the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, he noted, "[t]he claimant's medical record is scarce and does not show a longitude of treatment for any of the above-identified impairments." (AR at 62.) The ALJ also observed that although Plaintiff was referred to an orthopedic specialist for his knee pain, nothing in the record shows he sought that treatment. (*Id.*)

Moreover, the ALJ found Plaintiff's subjective complaints lacked credibility because the observations in the medical records by his treating physicians undermined his subjective complaints. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (holding ALJ may consider "observations of treating and examining physicians" when evaluating a claimant's credibility); *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999) (finding that inconsistency with clinical observations may be a clear and convincing reason for discrediting a claimant's complaints). The ALJ found Dr. Rathana-Nakintara and Dr. Karamlou's opinions contradicted Plaintiff's allegations of his functional limitations and inability to work due to his impairments. Dr. Rathana-Nakintara opined Plaintiff's mental status examination showed no abnormalities and Plaintiff was "holding himself quite well" without taking any psychotropic medications. (AR at 62.) Dr. Rathana-Nakintara determined Plaintiff "has no functional limitations in performing activities of daily living or work-related activities." (*Id.*) Dr. Karamlou similarly opined Plaintiff "has a functional capacity for medium work with frequent postural activities and frequent use of hands for fine and gross manipulation." (*Id.* at 63.)

Dr. Karamlou explained that although the examination showed there was tenderness in Plaintiff's left knee, there was no evidence of acute inflammation or reduced range of motion. (*Id.*) Thus, the ALJ properly discredited Plaintiff's complaints on the basis that they were unsupported by Dr. Rathana-Nakintara and Dr. Karamlou's observations.

Lastly, the ALJ discredited Plaintiff's testimony based on inconsistencies between his subjective complaints and the opinions of impartial medical experts. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) ("In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies ... between his testimony ... and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains.") (citing *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996)). The ALJ relied in part on the testimony of Drs. Alpern, DeMarco, and Borden to conclude Plaintiff's subjective complaints did not meet the Social Security Medical Listings criteria for a finding of disability. (*See* AR at 63.) The ALJ noted the impartial medical experts opined the severity of Plaintiff's physical and mental impairments did not meet or equal a listing. (*Id.*) In light of the experts' testimony, the ALJ stated, "The undersigned gives significant weight to the medical expert's opinions as they reviewed all of the claimant's medical evidence of records" and "their opinions are consistent with the record as a whole." (*Id.*) Thus, the ALJ properly considered the testimony of these medical experts in discrediting Plaintiff's subjective complaints.

Plaintiff's failure to seek treatment, and the inconsistencies between his subjective complaints and the observations and opinions of his treating physicians and impartial medical experts provide ample support for the ALJ's discounting of Plaintiff's claims of disabling symptoms. The ALJ has set forth "findings sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750

(9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345–46). Because the ALJ's findings are supported by substantial evidence, this Court may not engage in second-guessing. *See Thomas*, 278 F.3d at 959. Accordingly, the ALJ properly discounted Plaintiff's testimony based on specific credibility findings that are properly supported by the record.

### III.
### CONCLUSION

For the reasons discussed above, Plaintiff's motion for summary judgment is denied, and Defendant's cross-motion for summary judgment is granted. The Clerk of Court shall enter judgment accordingly and close this case.

**IT IS SO ORDERED**.

Dated: August 10, 2018

Hon. Dana M. Sabraw
United States District Judge